UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA,           )
                                    )
    vs.                             )
                                    )   No. 14-CR-10201-DJC
ERIC McPHAIL,                       )
            Defendant.              )
_____ )

**ERIC McPHAIL'S FIRST SET OF PROPOSED JURY INSTRUCTIONS**

1. **STATEMENT OF THE CASE**

    The Government alleges that Eric McPhail, the defendant, misappropriated material nonpublic information about American Superconductor, Corporation's (AMSC's) quarterly earnings reports and other business information concerning AMSC's business relationship with a Chinese company named SINOVAL. The information was provided to McPhail by one of AMSC's executives, Angelo Santamaria, a golfing friend and member of the same Country Club as McPhail. Mr. Santamaria gave the inside information to McPhail because Santamaria believed that he and McPhail had a relationship of trust and confidence and he further believed that McPhail would keep the information secret. McPhail, who did not trade himself, passed the information on to Douglas Parigian and several other golfing friends who, based on the inside information, purchased shares of AMSC before the quarterly reports were made public. Also, based on the information provided by McPhail, Parigian and his other golfing friends, using the inside information concerning SINOVAL, purchased options and "puts" which allowed them to profit on the inside information. All of what I have just said reflects the Government's allegations.

The defendant Eric McPhail denies that the information he received was nonpublic; denies that he received a benefit for transmitting the information he received from Santamaria and denies that he had the kind of relationship of trust and confidence with Santamaria which would have compelled him to keep what Santamaria told him secret. McPhail contends that even if Santamaria believed such a relationship existed, McPhail did not know, nor should he have known, that the relationship did in fact exist. Thus, McPhail maintains that he did not violate any statute or SEC rule and contends that he is not guilty of either conspiracy to commit insider trading or of insider trading.

2. **SOURCES OF EVIDENCE**

    The evidence in the case consists of the sworn testimony of all of the witnesses and all of the exhibits received in evidence. As the sole judges of the facts, you must determine which of the witnesses you believe, what portion of their testimony you accept, and what weight you attach to it. When counsel agree or stipulate to a fact, the jury must accept that stipulation.

**SOURCE:** Adapted from *SEC v. NOTHERN*, 2009 WL 1469332 (D.Mass.) (Boston Division) (Judge Young's Jury Instructions). See also, 1 F. Freedman et al. § 1 at 20 (charge by the Hon. William G. Young in *Cabral v. Sullivan,* Civ. No. 86-0259-Y (D. Mass. March 14, 1990)); 2 F. Freedman et al. § 6 at 742; charge by the Hon. A.D. Mazzone, *SEC v. Ingoldsby,* Civ. No. 88-1001-MA, Tr. Tr. at 4-5 (D. Mass. April 24, 1990).

3. **DIRECT AND CIRCUMSTANTIAL EVIDENCE -- REASONABLE INFERENCES**

There are two types of evidence from which a jury may find the truth as to the facts of a case. One is direct evidence, such as the testimony of an eyewitness, and the other is indirect or circumstantial evidence, which is the proof of a chain of circumstances pointing to the existence or non-existence of certain facts.

There is a simple example of circumstantial evidence that is often used in court. Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Assume that the courtroom has no windows and you could not look outside. As you were sitting here, someone walked in with an umbrella that was dripping wet. Then a few minutes later another person also entered with a wet umbrella. Now, you cannot look outside the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it had been raining. That is all there is to circumstantial evidence. You infer, based on reason, experience and common sense from one established fact the existence or non-existence of some other fact.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with the standard of proof in the case. The law is that the SEC can establish a case of fraud and deceit in the offer or sale of securities based on circumstantial evidence, even if the defendants do not confess that they have engaged in those acts.

You are to consider only the evidence in the case. But in your consideration of the evidence you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw, from facts that you find have been proved, such reasonable common sense inferences that you believe are justified in light of your experience.

**SOURCE:** Adapted from *SEC v. NOTHERN*, 2009 WL 1469332 (D.Mass.) (Boston Division) (Judge Young's Jury Instructions). See also, 2 F. Freedman et al. § 6 at 744; *United States v. Larrabee,* 240 F.3d 18, 21(1st Cir. 2001); *SEC v. Sargent,* 229 F.3d 68, 75 (1st Cir. 2000); *United States v. Libera,* 989 F.2d 596, 601 (2d Cir. 1993), *cert. denied,* 510 U.S. 976 (1993); *SEC v. Geon Industries, Inc.,* 531 F.2d 39, 46 (2d Cir. 1976); *SEC v. Singer,* 786 F. Supp. 1158, 1164-65 (S.D.N.Y. 1992); *SEC v. Musella,* 748 F. Supp. 1028, 1038 (S.D.N.Y. 1989), *aff'd,* 898 F.2d 138 (2d Cir. 1990), *cert. denied,* 498 U.S. 816(1990).

**4. PRESUMPTION OF INNOCENCE; BURDEN OF PROOF and REASONABLE DOUBT**

The indictment, or formal charge against a defendant, is not evidence of guilt. Indeed, the defendant is presumed by the law to be innocent. The defendant begins with a clean slate. The law does not require a defendant to prove his innocence or produce any evidence at all [and no inference whatever may be drawn from the election of a defendant not to testify].

The government has the burden of proving the defendant guilty beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant.  While the government's burden of proof is a strict or heavy burden, it is not necessary that the defendant's guilt be proved beyond all possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced the defendant is guilty. It is not required that the government prove guilt beyond all possible doubt.

A reasonable doubt is a doubt based upon reason and common sense and is not based purely on speculation. It may arise from a careful and impartial consideration of all the evidence, or from lack of evidence.

If after a careful and impartial consideration of all the evidence, you are not convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant not guilty. On the other hand, if after a careful and impartial consideration of all the evidence, you are convinced beyond a reasonable doubt that the defendant is guilty, it is your duty to find the defendant guilty.

A "reasonable doubt" is a doubt based upon reason and common sense after careful and impartial consideration of all the evidence in the case. Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in making the most important decisions of your own affairs.

**SOURCE:** Ninth Circuit Model Jury Instructions, 3.5 REASONABLE DOUBT-- DEFINED. See also Notes to Model Instruction: "The Ninth Circuit has held that giving the language of this model instruction "did not constitute plain error." *United States v. Ruiz*, 462 F.3d 1082, 1087 (9th Cir.2006) (citing *United States v. Nelson*, 66 F.3d 1036, 1045 (9th Cir.1995)). In *United States v. Gomez*, 725 F.3d 1121, 1131 (9th Cir.2013), the Ninth Circuit approved the conditional language in this model instruction regarding a jury's duty in a criminal case. Nonetheless, "[t]he Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Id.* (citing *United States v. Artero*, 121 F.3d 1256, 1258 (9th Cir.1997)). In addition, the Ninth Circuit has expressly approved a reasonable doubt instruction that informs the jury that the jury must be "firmly convinced" of the defendant's guilt. *United States v. Velasquez*, 980 F.2d 1275, 1278 (9th Cir.1992). In *Victor v. Nebraska*, 511 U.S. 1, 5 (1994), the Court held that any reasonable doubt instruction must (1) convey to the jury that it must consider only the evidence, and (2) properly state the government's burden of proof. *See also Gibson v. Ortiz*, 387 F.3d 812, 820 (9th Cir.2004), *overruled on other grounds by Byrd v.*

*Lewis*, 566 F.3d 855 (9th Cir.2009), and *United States v. Ramirez*, 136 F.3d 1209, 1213-14 (9th Cir.1998)."

5. **STIPULATED FACTS**

The parties have agreed, or stipulated, to certain facts. This means that you should treat these facts as true. You should consider these in addition to those facts that were proved to you at trial. The parties have stipulated to the following: ....

**SOURCE:** 4 L. Sand et al. Instruction No. 74-4.

6. **WHAT IS NOT EVIDENCE**

Certain things that you heard and saw during the trial are not evidence in the case. Statements and arguments of counsel are not evidence. Questions and objections by attorneys are not evidence. At times during the trial I sustained objections to questions asked without permitting the witness to answer or, where an answer was given, I ordered that it be stricken from the record and that you disregard it and dismiss it from your minds' You may not draw any inference from an unanswered question, nor may you speculate as to what the witness would have said if he or she had been permitted to answer the question.
Arguments by lawyers are not evidence, because the lawyers are not witnesses. What they have said to you in their opening statements and in their summations is intended to help you understand the evidence to reach your verdict. However, if your recollection of the facts differs from the lawyers' statements, it is your recollection which controls.
Exhibits which have been marked for identification may not be considered by you as evidence until and unless they have been received in evidence by the court.
To constitute evidence, exhibits must be received in evidence. Exhibits marked for identification but not admitted are not evidence, nor are materials brought forth only to refresh a witness' recollection.

Finally, statements which I may have made concerning the quality of the evidence do not constitute evidence. It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.

**SOURCES:** Adapted from *SEC v. NOTHERN*, 2009 WL 1469332 (D.Mass.) (Boston Division) (Judge Young's Jury Instructions). See also, 2 F. Freedman et al. § 6 at 742; charge by the Hon. A.D. Mazzone, *SEC v. Ingoldsby,* Civ. No. 88-1001-MA, Tr. Tr. at 6-7 (D. Mass. April 24, 1990); L. Sand, et al. Instruction No. 74-1.

7. **CREDIBILITY OF WITNESSES**

The law does not require you to accept all of the evidence as true simply because it was admitted at trial for your consideration. In deciding what evidence you will accept as true, you must make

your own evaluation of the testimony given by each of the witnesses, and you must determine the weight you choose to give to his or her testimony. You may believe all, none, or any part of any witness's testimony.

Sometimes it may appear that the testimony of a witness fails to conform to the facts as they occurred. This may be because the witness is intentionally telling a falsehood, because the witness did not accurately see or hear that about which he or she testifies, because the witness's recollection of the event is faulty, or because he or she has not expressed himself or herself very clearly. There is no magical formula for evaluating testimony. You bring with you to this courtroom all of the experience and background of your lives. In your everyday affairs you determine for yourselves the reliability or unreliability of statements made to you by others. In determining the reliability of testimony here, you may be guided by the appearance and conduct of a witness, or by the witness's manner in giving testimony, or by the character of the witness's testimony, or by evidence that contradicts the testimony.

You should carefully scrutinize the circumstances under which each witness testified and every matter in evidence that tends to show whether a witness is worthy of belief. Consider each witness's intelligence, motive, and state of mind, demeanor and manner while on the stand. Consider the witness's ability to observe the matters about which he or she testified, and whether he or she impressed you as having an accurate recollection of these matters. Consider also any relation each witness may bear to either side of the case; the way in which each witness might by affected by the verdict; and the extent to which, if at all, each witness's testimony is supported or contradicted by other evidence in the case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimonies of different witnesses, may or may not cause you to discredit such testimony. Two or more persons witnessing an incident or a transaction might see or hear it differently; and an innocent mis-recollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

**SOURCES:** Adapted from *SEC v. NOTHERN*, 2009 WL 1469332 (D.Mass.) (Boston Division) (Judge Young's Jury Instructions).  See also, 2 F. Freedman et al. § 6 at 742-44; charge by the honorable A.D. Mazzone, *SEC v. Ingoldsby,* Civ. No. 88-1001-MA, Tr. Tr. at 8-9 (D. Mass. April 24, 1990); charge by the Hon. Robert E. Keeton, *SEC v. Happ,* Civ. No. 00-12051-REK (D. Mass. Oct. 8, 2003).

8. **PRIOR INCONSISTENT STATEMENT**

You may have heard evidence that at some earlier time a witness said or did something that counsel argues is inconsistent with the witness's trial testimony. Evidence of a prior inconsistent statement was placed before you for the purpose of helping you decide whether, or how much, if any, of that witness's trial testimony to believe. In making this determination, you may consider whether the witness purposely made a false statement or made an innocent mistake; whether the inconsistency concerns an important fact or a small detail; whether the

witness had an explanation for the inconsistency and, if so, whether it appeals to your common sense.

**SOURCE:** 1 F. Freedman et al. § 1 at 54.

9. **SCHEME TO DEFRAUD**

In order to establish that McPhail violated Section 10(b) of the Exchange Act and Rule 10b-5 the Government must prove beyond a reasonable doubt that "in connection with" the purchase of AMSC stock he did any one or more of the following:

   a. Employed a device, scheme or artifice to defraud; or

   b. Made an untrue statement of material fact, or omitted to state a material fact which made what was said, under the circumstances, misleading; or

   c. Engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon any person.

A device, scheme or artifice to defraud is merely a deceptive plan for the accomplishment of an objective. Fraud is a general term that embraces all ingenious efforts and means that individuals devise to take advantage of others. The law that the defendant is alleged to have violated prohibits all kinds of manipulative and deceptive acts. The use of nonpublic information for securities trading purposes, **in breach of a duty of confidentiality,** constitutes just such a deceptive device prohibited under the law. Things become public in a variety of ways, not just by press release.

The "in connection with" aspect of this element is satisfied if you find that there was some nexus or relation between the alleged fraudulent conduct and the sale or purchase of securities.

Fraudulent conduct may be "in connection with" the purchase or sale of securities if you find that the alleged fraudulent conduct "touched upon" a securities transaction.

In this regard, the "in connection with a purchase or sale" aspect is satisfied if you find that McPhail knowingly or recklessly disclosed and knew his friends would use the material, nonpublic information that had been misappropriated in breach of a duty to keep it confidential.

The Government must prove beyond a reasonable doubt that McPhail disclosed the information in breach of a fiduciary-like duty to Angelo Santamaria and for the purpose of obtaining an advantage in securities trading.

It is no defense to an overall scheme to defraud that the defendant was not involved in the scheme from its inception, or played only a minor role.

**SOURCES:** Adapted from *SEC v. NOTHERN*, 2009 WL 1469332 (D.Mass.) (Boston Division) (Judge Young's Jury Instructions). See also, 3 L. Sand et al. Instruction No. 82-4; *United States*

*v. O'Hagan,* 521 U.S. 642, 655-56 (1997); *Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 US 6, 12-13 (1971); *United States v. Larrabee,* 240 F.3d 18, 24 (1st Cir. 2001); *SEC v. Sargent,* 229 F.3d 68, 75 (1st Cir. 2000); *United States v. Newman,* 664 F.2d 12, 18 (2d Cir. 1981); *SEC v. Clark,* 915 F.2d 439, 449 (9th Cir. 1990)

    10. **INSIDER TRADING** [in general]

The particular "device, scheme or artifice" that the Government alleges the defendant employed in this case is known as insider trading. An insider is one who comes into possession of material, nonpublic information about a publicly traded security by virtue of a relationship that involves trust and confidence. When a person has such "inside information" and his position of trust or confidence prevents him from disclosing that information, the law forbids him from using that information for his own benefit to purchase or sell the securities in question. The law also forbids the insider from using the information to recommend that other people buy securities before the inside information is made public.

The prohibition on using inside information has developed because of the basic unfairness that would result from allowing persons with access to material nonpublic information intended to be used only for proper purposes, to benefit personally from the use of such information.

Persons who are corporate officers, directors and controlling shareholders are considered "insiders" for purposes of this rule. In addition, a person will be forbidden to buy or sell securities of a company if the Government establishes that the defendant had assumed a special relationship affording him access to material, nonpublic information intended to be available only for a corporate purpose and not for his personal benefit. Thus, it is the special nature of the relationship which determines whether a person is an insider, and not merely the title he holds. In addition to insiders, the law applies to those persons who, while not themselves insiders, obtained inside information, directly or indirectly, from a corporate insider. This is because when a person is entrusted with information in confidence, and then uses it for personal profit or to profit friends or relatives, the information has been misappropriated, or stolen, in breach of that duty of trust or confidence. This is a form of fraud on the person or entity that entrusted the insider with that information.

In this case, the Government contends that McPhail is liable under what the law refers to as the "misappropriation theory" of insider trading. Under this theory, a person violates Section 10(b) of the Exchange Act and Rule 10b-5(a) when he misappropriates material nonpublic information for securities trading purposes in breach of a duty owed to the source of the information. Said differently, a fiduciary's or similar confidant's undisclosed, self-serving use of a principal's information to purchase or sell securities, or to intentionally or severely recklessly tip another person who purchases or sells securities, in breach of a mutual duty of loyalty and confidentiality defrauds the principal of the exclusive use of that information.

The defendant McPhail in this case is charged with receiving inside information and using it for his own benefit, even though he himself did not owe any duty of trust or confidence which prevented him from buying and selling AMSC stock. The basis for this allegation is that McPhail was a secondary "tippee" of inside information – that is, that he passed the inside information

along to Mr. Parigian and others in breach of a mutual understanding between Mr. McPhail and Angelo Santamaria that their relationship required them to keep matters discussed between them confidential.

**SOURCES:** Adapted from *SEC v. NOTHERN*, 2009 WL 1469332 (D.Mass.) (Boston Division) (Judge Young's Jury Instructions). Which, in turn, was adapted from 4 L. Sand et al. Instruction 82-6; *U.S. v. O'Hagan,* 521 U.S. 642, 652 (1997); *Dirks v. SEC,* 463 U.S. 646, 654 (1983); *Chiarella v. U.S.,* 445 U.S. 222, 235-37, 240 (Burger, C.J., dissenting) (1980); *SEC v. Clark,* 915 F.2d 439, 443-53 (9th Cir. 1990); *SEC v. Materia,* 745 F.2d 197, 203 (2d Cir. 1984), *cert, denied.* 471 U.S. 1053 (1985); *United States v. Newman,* 664 F. 2d 12, 17-18 (2d Cir. 1981); *SEC v. Texas Gulf Sulphur,* 401 F.2d 833, 848 (2d Cir. 1968), *cert, denied.* 394 U.S. 976 (1969); *SEC v. Musella,* 748 F. Supp. 1028,1037 (S.D. N.Y. 1989); *SEC v. Lund,* 570 F. Supp. 1397, 1402 (C.D. Cal. 1983); *Cady Roberts & Co.* 40 S.E.C. 907, 911 (1961).

11. **PROVING TIPPEE LIABILITY**

I will now instruct you as to what elements the Government must prove beyond a reasonable doubt to establish tippee liability under a misappropriation theory of insider trading. The Government alleges that McPhail is a secondary "tippee" in an illegal insider trading scheme. That is, the Government alleges the McPhail received inside information from Angelo Santamaria, that was NOT provided to him in breach of Mr. Santamaria' fiduciary duty or similar duty of confidence and trust to AMSC. McPhail would be a criminally responsible secondary "tippee" if he further disclosed the information Angelo Santamaria disclosed to him concerning the quarterly earnings; the initial contract with SINOVAL, and later, the possibility of the cancellation of SINOVAL's relationship with AMSC, in violation of a mutual understanding of trust and confidence between him and Mr. Santamaria. This information was allegedly further disseminated by McPhail to his friends which enabled McPhail's friends to obtain profits from certain securities trades. McPhail denies these allegations.

The Government must establish that McPhail engaged in a fraudulent scheme to use material nonpublic information for his and his friend's personal benefit in connection with his the purchase and sale of AMSC stock and options to purchase the stock. In order to establish a fraudulent scheme in this case, the Government must prove each of the following elements of insider trading beyond a reasonable doubt.

*First*, that the defendant received information concerning the quarterly earnings; the initial contract with SINOVAL, and later, the possibility of the cancellation of SINOVAL's relationship with AMSC from Angelo Santamaria, an insider who owed a duty of trust and confidence to AMSC to keep this information private at least until it was disclosed to the public.

*Second*, this information was nonpublic.

*Third*, this information was material.

*Fourth*, that McPhail knew, should have known, or was reckless in not knowing that the information he received was material nonpublic information that originated from a source who breached a duty of confidentiality.

*Fifth*, that McPhail used the material nonpublic information, by disclosing it to his friends, in breach of his duty to Angelo Santamaria to keep this information confidential.

*Sixth*, that the defendant used the mails, telephone or other instruments of interstate commerce, or the facilities of a national securities exchange, in furtherance of his or her insider trading

I will now explain these concepts in more detail.

**SOURCES:** Adapted from *SEC v. NOTHERN*, 2009 WL 1469332 (D.Mass.) (Boston Division) (Judge Young's Jury Instructions). Which, in turn, was derived from 4 L. Sand, et al. Instruction. 82-6 (2003); *U.S. v. O'Hagan,* 521 U.S. 642, 652 (1997); *Dirks v. SEC,* 463 U.S. 646, 660,662-64 (1983); *Chiarella v. U.S.,* 445 U.S. 222, 230 n. 12 (1980); *SEC v. Musella,* 748 F. Supp. 1028,1037 (S.D. N.Y. 1989); *SEC v. Tome,* 638 F. Supp. 596, 617 (S.D.N.Y 1986), *aff'd,* 833 F.2d 1086 (2d Cir.), *cert, denied sub nom. Lombardfin S.P.A. v. SEC,* 486 U.S. 1014 (1988).

## 12. FIDUCIARY DUTY OR SIMILAR DUTY OF TRUST AND CONFIDENCE

The *first* element the Government must prove beyond a reasonable doubt to establish that McPhail engaged in a scheme to defraud is that he received inside information from Angelo Santamaria concerning: the quarterly earnings; the new contract with SINOVAL; and later the possible cancellation of SINOVAL's relationship with AMSC. The government must prove beyond a reasonable doubt that McPhail owed a fiduciary duty or a similar duty of trust and confidence to Angelo Santamaria such that McPhail was obliged to keep material nonpublic information learned from Angelo Santamaria confidential. Confidential relationships are recognized under the law where a special confidence is reposed in another person, and that person is bound to maintain that confidence. Lawyers, priests and doctors are classic examples of such persons. The repeated disclosure of business secrets to that person may establish such a duty.

There are no hard and fast rules for determining whether a duty to maintain a confidence exists. The duty may be expressed directly, through an outright agreement between the parties. The duty may also be inferred by you from a history, pattern, or practice of sharing confidences, such that the recipient of the information knows or reasonably should know that the person communicating the information expects that the recipient will maintain its confidentiality.

The duty may arise from a communication involving matters that are confidential, and a mutual expectation, explicit or inferred, by those persons that the communication is meant to remain confidential.

The Government is not required to prove that McPhail had a strictly fiduciary relationship with Angelo Santamaria; it need only show that McPhail and the Angelo Santamaria had the kind of

9

similar relationship of trust and confidence that obligated McPhail to maintain the confidentiality of Angelo Santamaria when disclosing information provided to him by Angelo Santamaria.

The Government does not allege that Eric McPhail had a written agreement with Angelo Santamaria that created a fiduciary-*like* duty of trust and confidence, but, rather, that McPhail had a history, pattern and practice of maintaining the confidentiality of Angelo Santamaria, and that McPhail violated his duty to Angelo Santamaria by conveying information about the quarterly earnings; the new contract with SINOVAL, and later the possible cancellation of SINOVAL's relationship with AMSC to his friends.

Thus, for the government to establish that McPhial was forbidden from passing along what Santamaria said to him, it must show that the information was material, was not otherwise available to the public, and that McPhail and Santamaria had a mutual agreement (understanding) that each was expected to keep the material information confidential.  In this regard, you are instructed that a mere *friendship* is not sufficient to satisfy this element by imposing insider status on McPhail. See *United States v. Riley*, No. 13-CR-339-1 VEC, 2015 WL 891675 (S.D.N.Y. Mar. 3, 2015). In order for McPhail to be an insider, the nature of the relationship must be one of trust and confidence sufficiently strong to impose a duty of secrecy.

To repeat, the mere possession of non-public or "inside" information did not impose any duty on McPhail to refrain from trading or further disclosing the information. You must find, *beyond a reasonable doubt*, that there existed some special relationship as I have just explained, that created such a duty. It is the breach of that duty that provides the basis for the government's charge that McPhail unlawfully engaged in a device, scheme or artifice to defraud by trading on material non-public information. See *United States v. McGee*, 892 F. Supp. 2d 726 (E.D. Pa. 2012) aff'd, 763 F.3d 304 (3d Cir. 2014).

**SOURCES***:* Adapted from 3 L. Sand, *et al.,* Modern Federal Jury Instructions -- Criminal, Instr. 57-23 (2011). *See also United States v. O'Hagan*, 521 U.S. 641, 652 (1997) (adopting the misappropriation theory); *Chiarella v. United States*, 445 U.S. 222, 223 (1980) (there is no "general duty between participants in market transactions" to forgo trading on material, nonpublic information); *United States v. Chestman,* 947 F.2d 551 (2d Cir. 1991) (defining the contours of a fiduciary-like relationship of trust and confidence); Selective Disclosure and Insider Trading, Exchange Act Release No. 34-43154, 65 Fed. Reg. 51716, 51730 (Aug. 15, 2000) (noting "that evidence about the type of confidences shared in the past might be relevant to determining the reasonableness of the expectation of confidence").
**ADDITIONAL SOURCES:** Adapted from *SEC v. NOTHERN*, 2009 WL 1469332 (D.Mass.) (Boston Division) (Judge Young's Jury Instructions).  See also, 17 C.F.R. 240.10b5-2; *SEC v. Rocklage,* 470 F.3d 1, 7 (1st Cir. 2006); *United States v. Chestman,* 947 F.2d 551, 566 (2d Cir. 1991); *SEC v. O'Hagan,* 521 U.S. 642, 652 (1997); *Chiarella v. U.S.,* 445 U.S. 222, 235-37, 240 (Berger, C.J., dissenting) (1980); *SEC v. Materia,* 745 F.2d 197, 203 (2d Cir. 1984), *cert. denied,* 471 U.S. 1053 (1985); *United States v. Newman,* 664 F. 2d 12 (2d Cir. 1981). *SEC v. Singer,* 786 F. Supp. 1158, 1169 (S.D.N.Y. 1992).

13. **NONPUBLIC INFORMATION**

The *second* element the Government must establish beyond a reasonable doubt to show a violation of Section 10(b) of the Exchange Act and Rule 10b-5 is that the information received by Eric McPhail from Angelo Santamaria was nonpublic. The question for you to answer is whether the defendant received nonpublic information about: the quarterly earnings; the initial contract with SINOVAL; and later, the possibility of the cancellation of SINOVAL's relationship with AMSC and was in possession of that nonpublic information when he disclosed the information to his friends. Nonpublic information is information which is not generally available to the public through such sources as press releases, trade publications, or other publicly available sources.

Information is considered nonpublic for purposes of insider trading liability until such information has been effectively disseminated in a manner sufficient to insure its availability to the investing public and without favoring any special person or group, or until trading on this information by a few people has caused the information to be fully impounded in the price of the particular security. In deciding whether information has been effectively disseminated to the investing public, bear in mind that the test is not when a limited segment of people found out about the information, the test is when the investors throughout the country had access to that information.

**SOURCES:** Adapted from *SEC v. NOTHERN*, 2009 WL 1469332 (D.Mass.) (Boston Division) (Judge Young's Jury Instructions). See also, 17 C.F.R. § 240.10b5-2;; *SEC v. Rocklage,* 470 F.3d 1, 7 (1st Cir. 2006); *SEC v. Mayhew,* 121 F.3d 44, 50 (2d Cir. 1997); *Dirks v. SEC,* 463 U.S. 646, 653-54 (1983); *United States v. Libera,* 989 F.2d 596, 601 (2d Cir. 1993); *SEC v. Texas Gulf Sulphur Co.,* 401 F.2d 833, 854 (2d Cir. 1968), *cert. denied,* 394 U.S. 976 (1969); *SEC v. Lund,* 570 F. Supp. 1397, 1401 (C.D. Cal. 1983).

14. **MATERIALITY**

The *third* element the Government must establish beyond a reasonable doubt is that the information received by McPhail from Angelo Santamaria was material. Information is material if there is a substantial likelihood that a reasonable shareholder would consider the information important to his or her investment decision. A material fact is one that is likely to be viewed by a reasonable investor as significantly altering the total mix of available information about the investment. Furthermore, materiality can be shown when the public announcement of the information causes fluctuation in the price of the security.

It is up to you to decide based on all of the relevant evidence whether the information allegedly known by the defendant was material

**SOURCES:** Adapted from *SEC v. NOTHERN*, 2009 WL 1469332 (D.Mass.) (Boston Division) (Judge Young's Jury Instructions). See also, 2 F. Freedman et al. § 6 at 747; 3 L Sand et al. Instruction No. 82-4; *Basic Inc. v. Levinson,* 485 U.S. 224, 238 (1988); *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 439, 449 (1976); *United States v. Mylett,* 97 F.3d 663, 667 (2d Cir.

1996); *SEC v. Maio,* 51 F.3d 623, 637 (7th Cir. 1995); *Milton v. Van Dorn Co.,* 961 F.2d 965, 969 (1st Cir. 1992); *In re Apple Computer Securities Litigation,* 886 F. 2d 1109, 1116 (9th Cir. 1989); SEC v. Geon Industries, Inc., 531 F.2d 39, 47 (2d Cir. 1976); charge by the Hon. A.D. Mazzone, *SEC v. Ingoldsby,* Civ. No. 88-1001-MA, Tr. Tr. at 16-17 (D. Mass. April 24, 1990).

15. **STATE OF MIND**

The *fourth* element the Government must establish beyond a reasonable doubt is that Eric McPhail acted with the required state of mind. The state of mind requirement is satisfied in this case if you find that when McPhail disclosed the information he received from Angelo Santamaria, he knew, should have known or was reckless in not knowing that the information he received concerning: the quarterly earnings; the initial contract with SINOVAL; and later, the possibility of the cancellation of SINOVAL's relationship with AMSC was material nonpublic information that would not have been available to him unless Angelo Santamaria breached a fiduciary duty or similar duty of trust and confidence to AMSC.

"Knowingly" means to act intentionally and deliberately, rather than mistakenly or inadvertently. Proof of knowledge consists of showing an awareness of the underlying facts. In the context of an insider trading case, knowledge is established by proof that the defendant had actual knowledge of material nonpublic information - information a reasonable investor would consider important in making an investment decision, was aware of the insider's duty of trust and confidence to keep the information confidential, and, despite this, knowingly purchased or sold securities based on this nonpublic information. It is not necessary, however, that the Government prove that the McPhail knew he was violating an SEC rule. "Recklessness" is conduct that departs so far from the standards of ordinary care that you may reasonably infer that the defendant was aware of what he was doing.

Direct proof of state of mind is almost never available, and it is not required to prove intent. You cannot peer into a person's head to see what he was thinking at some time in the past. Therefore, whether the defendant knew, should have known or was reckless in not knowing may be established by circumstantial evidence based upon a person's words, conduct, acts, and all the surrounding circumstances and the reasonable inferences that may be drawn from them. The defendant's conduct may be considered in light of other evidence in the case if it tends to prove any issue, including state of mind. You may also consider such evidence as the defendant's knowledge of the marketplace in general or evidence regarding his business experience.

The Government need not show that the defendant knew or should have known of the specific duty Angelo Santamaria owed to AMSC. Rather, the Government must show beyond a reasonable doubt that McPhail knew, should have known or was reckless in not knowing that the information he received from Angelo Santamaria would not have been available to him unless Angelo Santamaria breached a fiduciary duty or similar duty of trust and confidence.

**SOURCES:** Adapted from *SEC v. NOTHERN*, 2009 WL 1469332 (D.Mass.) (Boston Division) (Judge Young's Jury Instructions).  See also, 4 L. Sand et al. Instruction 82-8; *Herman & MacLean v. Huddleston,* 459 U.S. 375, 390 fn. 30 (1983); *Dirks v. SEC,* 463 U.S. 646, 651, 660 (1983); *Chiarella v. United States,* 445 U.S. 222, 230 n. 12 (1980); *SEC v. Blavin,* 760 F.2d 706,

711 (6th Cir. 1985); *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017, 1023 (6th Cir. 1979); *SEC v. Musella,* 678 F. Supp. 1060, 1062-1063 (S.D.N.Y. 1988); charge by Hon. *Judge Owen, U.S. v. Grossman,* 87 Cr. 223 (S.D.N.Y. 1987), Tr. 1370-71, *aff'd.,* 843 F.2d 78 (2d Cir. 1988), *cert denied,* 488 U.S. 1040 (1989); charge by Hon. Judge Ward, *U.S. v. Reed,* 84 Cr. 610 (S.D.N.Y. 1985), Tr. 1474-78; charge by Hon. *Judge Haight, U.S. v. Newman,* 82 Crim. 166 (S.D.N.Y. 1982), Tr. 3555, *aff'd.,* 722 F.2d 729 (2d Cir.), *cert. denied,* 464 U.S. 863 (1983); charge by the Hon. *Robert E. Keeton, SEC v. Happ,* Civ. No. 00-12051-REK (D. Mass. Oct. 8, 2003).

### 16. **USE OF INSIDE INFORMATION – a BENEFIT to the *TIPPER***

The *fifth* element the Government must establish beyond a reasonable doubt is that McPhail became a "tipper" by sharing with others the information Santamaria imparted concerning: the quarterly earnings; the initial contract with SINOVAL; and later, the possibility of the cancellation of SINOVAL's relationship with AMSC and benefited from disclosing this material nonpublic information.

To be held criminally liable for insider trading, the Government must establish beyond a reasonable doubt that McPhail, the alleged secondary tipper, breached a lawfully imposed duty of confidentiality in exchange for some personal benefit. The element of self-dealing, in the form of a personal benefit—whether immediate or anticipated, and whether substantial or very modest—must be proven beyond a reasonable doubt.

Tipper liability requires that (1) the tipper [McPhail] had a legal duty to keep material non-public information confidential; (2) the tipper [McPhail] breached that duty by intentionally or recklessly relaying the information to a tippee [McPhail's friends] who could use the information in connection with securities trading; and (3) the tipper [McPhail] received a personal benefit from the tip.

The tipper must know that the information that is the subject of the tip is non-public and is material for securities trading purposes, or act with reckless disregard of the nature of the information. The tipper must also know that to disseminate the information would violate a fiduciary duty. To be transmitted "improperly, there would need to be a benefit flowing from the tippee(s) to the tipper.


**SOURCES:** See *SEC v. Yun*, 327 F.3d 1263 (11th Cir.2003) for the view that personal benefit is also a requirement of liability under the misappropriation theory. See also, *United States v. Newman, No. 13-1837-CR, 2014 WL 6911278, at *1-14 (2d Cir. Dec. 10, 2014); Chiarella v. United States,* 445 U.S. 222, 226-27 (1980); *United States v. Whitman*, 904 F.Supp.2d 363 (S.D.N.Y. 2012); *United States v. Falcone*, 257 F.3d 226, 234 (2d Cir.2001); *United States v. Mylett*, 97 F.3d 663, 668 (2d Cir.1996); and *United States v. Libera*, 989 F.2d 596, 600 (2d Cir.1993); *United States v. Rajaratnam*, 802 F.Supp.2d 491, 498–99 (S.D.N.Y.2011); *State Teachers Ret. Board v. Fluor Corp.*, 592 F.Supp. 592, 594 (S.D.N.Y.1984); *SEC v. Obus*, 2012 WL 3854797 (2d Cir. Sept. 6, 2012) (Obus II); *United States v. McGee*, 763 F.3d 304, 311 (3d Cir. 2014)

Eric McPhail reserves the right to amend or add to the within Proposed Jury Instructions depending on the course of the trial and the issues raised therein.

                                                  Respectfully submitted,

                                                  Eric McPhail, defendant
                                                  By his attorneys,
                                                  /s/ *Thomas R. Kiley*
                                                  /s/ *William J. Cintolo*

                                                  _____
                                                  Thomas R. Kiley, BBO No. 271460
                                                  William J. Cintolo, BBO No. 084120
Dated: May 22, 2015                       COSGROVE EISENBERG & KILEY
                                                  One International Place, Suite 1820
                                                  Boston, MA 02110
                                                  617.439.7775 (tel) – 617.330.8774 (fax)
                                                  WCintolo@CEKLaw.net

**Certificate of Service**

I, William J. Cintolo, hereby certify that on this date, May 22, 2015, a copy of the foregoing document has been served via electronic filing upon all registered parties, including Assistant U.S. Attorney(s)

                                                  /s/ *William J. Cintolo*
                                                  _____
                                                  William J. Cintolo